UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

WALTER F. REYNOLDS, III,

                  Plaintiff,

v.                                    **DECISION AND ORDER**
                                             06-CV-123S

WILLIAM KREBS,
*individually and as Mayor of the Village of Springville*,
TIMOTHY L. HORNER,
*individually and as Village Administrator of the
Village of Springville*,
MICHAEL KALETA,
*individually and as Code Enforcement Officer/Building
Inspector of the Village of Springville*, and
THE VILLAGE OF SPRINGVILLE, NY,[1]

                  Defendants.

## I.  INTRODUCTION

In this civil rights action brought pursuant to 42 U.S.C. § 1983, Plaintiff Walter F. Reynolds, III, alleges that Defendants, all of whom are officials of the Village of Springville, NY, violated his First, Fifth, and Fourteenth Amendment rights when they demolished his property — the Leland House — after a fire.  Presently before this Court are the parties' Motions for Summary Judgment.[2]  For the following reasons, Plaintiff's motion is denied, and Defendants' motion is granted.

---

[1] Plaintiff consents to the dismissal of his claims against Defendants Horner and Kaleta, both in their individual and official capacities.  (Docket No. 35, p. 3.)  Plaintiff also consents to dismissal of his claims against Defendant Krebs in his individual capacity.  (Id.)  These claims will therefore be dismissed.

[2] Plaintiff filed a Motion for Partial Summary Judgment on Liability on his first cause of action.  In support thereof, he filed a memorandum of law, a Rule 56 Statement of Undisputed Facts, the Affidavit of Walter F. Reynolds, III, the Affirmation of David J. Seeger, Esq., with exhibits, and the Reply Affidavit of David J. Seeger, Esq.  (Docket Nos. 26, 33.)  In opposition, Defendants filed Objections to Plaintiff's Rule 56 Statement of Undisputed Facts and the Affidavit of Michael F. Perley, Esq., with exhibits.  (Docket Nos. 29, 31.)
      Defendants also filed a Motion for Summary Judgment.  In support thereof, they filed a memorandum of law, a Rule 56 Statement of Undisputed Facts, the Affidavit of Michael F. Perley, Esq., the Affidavit of William J. Krebs, the Affidavit of Robert J. Runge, II, and the Affidavit of Michael Kaleta.  (Docket Nos. 18-25.)  Plaintiff filed a memorandum in opposition.  (Docket No. 35.)

## II. BACKGROUND

**A.     Facts**

Plaintiff owned and lived in the Leland House, a three-story, historic structure located at 26 E. Main Street in the Village of Springville, N.Y.  (Defendants' Rule 56 Statement of Undisputed Facts[3] ("Defendants' Statement"), Docket No. 20, ¶¶ 1-3; Reynolds Aff., Docket No. 26-6, ¶¶ 2, 3, 5.)  At times, Plaintiff operated a restaurant and tavern out of the Leland House that was intermittently open to the public.  (Reynolds Aff., ¶¶ 3, 7.)

The Leland House was situated within feet of Main Street (a state road) in the middle of the Village's downtown business district.  (Defendants' Statement, ¶¶ 4, 5.) Attached to the Leland House was a wooden structure that extended the length of the building and overhung the public sidewalk to the curb of the street.  (Defendants' Statement, ¶ 6.)  The support columns for this structure were located near the curb. (Defendants' Statement, ¶ 7.)

On the morning of January 18, 2006, there was a fire at the Leland House. (Defendants' Statement, ¶ 8; Reynolds Aff., ¶ 11.)  Although it appears that the fire was extinguished by emergency personnel without incident, Main Street was closed to traffic through the afternoon of January 19, 2006.  (Reynolds Aff., ¶ 12; Defendants' Statement, ¶ 22.)

---

[3] Plaintiff also filed a Statement of Undisputed Facts.  (Docket No. 26-7.)  But because Plaintiff's submission does not comply with Local Rule 56.1(d), which requires that "[e]ach statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," this Court has not considered it.

After the fire, Defendant Krebs was called to the scene to assess the damage and determine whether the building posed a threat to public safety or the security of adjoining properties. (Krebs Aff., Docket No. 21, ¶¶ 2, 3.) Krebs observed "extensive fire damage" to the Leland House: the wooden frame was damaged; the roof was partially collapsed onto the first level; the cupola was damaged and not sufficiently supported; pieces of the roof and siding were hanging down; and the exterior sign was not secured. (Krebs Aff., ¶ 3.)

Based on what he saw, Krebs was concerned about the safety and security of Village residents, as well as the properties surrounding the Leland House. (Krebs Aff., ¶ 4.) Specifically, he was concerned that the Leland House would collapse into Main Street or onto an adjacent property, or that pieces of the exterior would fall and damage property or hit a passing individual or vehicle. (Krebs Aff., ¶ 6.) Because of these concerns, Krebs sought the advice of Defendant Kaleta, the Village Building Inspector/Code Enforcement Officer. (Krebs Aff., ¶ 6; Kaleta Aff., Docket No. 23, ¶ 1.)

Along with being the Building Inspector/Code Enforcement Officer, Kaleta was a volunteer fireman, and he responded to the initial fire call and helped extinguish the fire. (Kaleta Aff., ¶ 2.) After the fire was out, Kaleta, in his role as Building Inspector, inspected the building to determine the extent of the damage. (Kaleta Aff., ¶ 3.) He observed the following conditions: smoke and water damage to the bar, kitchen, and front dining room on the first level; fire damage in the rear dining area; damage to the column at the rear of the stairway; and damage to the support beam for the second level. (Kaleta Aff., ¶ 4.) Kaleta was unable to climb the interior stairway to access the second level because "it was gone due to fire damage." (Kaleta Aff., ¶ 5.) Instead, he climbed the fire escape, from

3

which he observed major fire damage to the second level, including a two to three foot sag in the ceiling-floor assembly between the second and third levels. (Kaleta Aff., ¶¶ 4, 6.) He also observed that the third level ceiling-roof assembly was destroyed. (Kaleta Aff., ¶ 6.)

Based on these observations, Kaleta joined in Krebs's concern that the Leland House posed a threat to the safety of the public and adjoining property. (Kaleta Aff., ¶ 7; Krebs Aff., ¶ 7.) He therefore requested that Robert Runge, II, a professional civil engineer, inspect the Leland House and determine whether it was structurally safe. (Kaleta Aff., ¶ 8; Krebs Aff., ¶ 8; Runge Aff., Docket No. 22, ¶¶ 1-3.)

Runge arrived at the Leland House just as the fire department was in the final stages of extinguishing the fire. (Runge Aff., ¶ 4.) Runge was unable to enter the building at that time and unable to see the understructure of the first floor. (Runge Aff., ¶¶ 4, 5). Instead, he ascended the fire escape with Kaleta. (Runge Aff., ¶¶ 4, 5; Kaleta Aff., ¶ 9.) From the fire escape, Runge could see clear through the second floor down into the first floor due to the damage caused by the fire. (Runge Aff., ¶ 6.) He observed that most of the interior walls were "burned out" and that the entire structure was soaked with water. (Runge Aff., ¶¶ 5, 6.) On the exterior, Runge observed pieces of the roof and facade hanging from the building, and saw the sign of the building hanging in an unsecured manner. (Runge Aff., ¶ 6.) Based on these observations, his knowledge that high winds were predicted for the area, and the Leland House's close proximity to the public sidewalk and road, Runge concluded that the Leland House was a danger to the public, and he advised Kaleta that he could not certify that it was structurally sound and safe. (Runge Aff., ¶ 9; Kaleta Aff., ¶ 9.)

Kaleta reported Runge's opinion to Krebs. (Kaleta Aff., ¶ 11; Krebs Aff., ¶ 8.) After receiving Runge's opinion, further discussing the situation with Kaleta, and consulting the Village's attorney, Krebs invoked his authority under § 77-11 of the Code of the Village of Springville and directed Kaleta to arrange for the immediate demolition of the Leland House on an emergency basis. (Krebs Aff., ¶¶ 10-12; Kaleta Aff., ¶ 11.) This decision was based on (1) the opinions of Kaleta and Runge that the Leland House lacked structural integrity, (2) the Leland House's location in the business district and close proximity to public ways, and (3) the expected weather conditions, including anticipated winds of 50-60 MPH. (Krebs Aff., ¶ 10.)

But before the demolition took place, Krebs and Kaleta allegedly spoke to Plaintiff and advised him that demolition would proceed unless Plaintiff could provide documentation from a professional engineer by noon on January 19, 2006, that the Leland House could either be saved or at least secured. (Krebs Aff., ¶ 13; Kaleta Aff., ¶ 12.) No such documentation was ever received; the demolition therefore went forward. (Krebs Aff., ¶ 13; Kaleta Aff., ¶ 13.)

Plaintiff paints a different picture. He states that according to investigators,[4] the fire originated in a closet beneath the main staircase between the first and second floors. (Reynolds Aff., ¶ 14.) He further states that damage to the Leland House was limited primarily to the third floor, that the structure had "no or virtually no fire damage," and that notwithstanding the fire, the Leland House remained structurally sound and was immediately secured with an emergency enclosure. (Reynolds Aff., ¶¶ 13, 15, 16, 26, 32.)

---

[4] Plaintiff never identifies these investigators, nor does he submit an affidavit or any evidence from them.

Plaintiff further states that the general public entered and exited the Leland House on the morning of January 19, 2006 (allegedly to scavenge mementos and Plaintiff's property), without any intervention by the Village and law enforcement officials who were present, further bolstering his position that the Leland House was structurally sound. (Reynolds Aff., ¶¶ 27, 28.)

Plaintiff maintains that Defendants never notified him of their intention to immediately demolish the Leland House, but as soon as he learned that demolition was imminent, he demanded that it be stopped. (Reynolds Aff., ¶¶ 18-20, 30, 31.) According to Plaintiff, Defendant Horner responded, "we don't care about you," when Plaintiff demanded that the demolition not go forward. (Reynolds Aff., ¶ 21.) Plaintiff states that Defendants gave him until noon on January 19, 2006, to remove his property. (Reynolds Aff., ¶ 22.)

Plaintiff also asserts that he maintained $200,000 worth of fire and other hazard insurance coverage, and could therefore have repaired the Leland House if Defendants had not demolished it. (Reynolds Aff., ¶¶ 24, 25.) Instead, he was billed $60,000 to recoup the Village of Springville's demolition expenses. (Reynolds Aff., ¶ 35.)

**B.     Procedural History**

Plaintiff instituted this action on March 3, 2006, by filing a Complaint in the United States District Court for the Western District of New York. The parties filed their Motions for Summary Judgment on March 15, 2007. Briefing was completed on June 20, 2007, at which time this Court took the motions under advisement without oral argument.

## III. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

### B. 42 U.S.C. § 1983

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide

a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Plaintiff asserts his claims under the First, Fifth, and Fourteenth Amendments.

**C.     Plaintiff's Procedural Due Process Claims**

Plaintiff moves for partial summary judgment as to liability on his claim that Defendants Krebs and the Village of Springville[5] denied him due process in violation of the Fifth and Fourteenth Amendments when they ordered that the Leland House be demolished without first providing him notice and an opportunity to be heard. Defendants oppose Plaintiff's motion, and in their own motion, argue that they are entitled to summary judgment because ordinary due process procedures were not required in light of the emergency nature of the demolition.

A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an

---

[5] Defendants argue that the Village of Springville should be dismissed from this case because Plaintiff has failed to establish that the alleged deprivation was the result of a municipal policy or custom, such that there could be municipal liability under Monell. See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978); Bd. of the County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 400, 117 S.Ct. 1382, 1386, 137 L.Ed.2d 626 (1997). Plaintiff argues that the Village of Springville is a proper defendant because under Pembaur, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). In light of the fact that this Court finds that Defendants are entitled to summary judgment (below), it need not decide this issue. In any event, because Defendant Krebs is being sued in his official capacity, the Village of Springville is ultimately the real party in issue. See Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

opportunity to be heard. See B.D. v. DeBuono, 130 F. Supp. 2d 401, 432-33 (S.D.N.Y. 2000). To prevail on a procedural due process claim, a plaintiff must show that he or she possessed a protected liberty or property interest and was deprived of that interest without due process of law. Kassim v. City of Schenectady, 255 F. Supp. 2d 32, 37 (N.D.N.Y. 2003) (citing McMenemy v. City of Rochester, 241 F.3d 279, 285-86 (2d Cir. 2001) (internal citations omitted)). Here, Defendants do not contest that, as the owner of the Leland House, Plaintiff possessed a protected property interest. Rather, Defendants argue that because of the emergency circumstances, they had no obligation to provide ordinary due process.

The Supreme Court has recognized that "the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." Parratt v. Taylor, 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Paratt thus provides an emergency-based exception to the requirement that notice and predeprivation process be provided. See Catanzaro v. Weiden, 188 F.3d 56, 61 (2d Cir. 1999). In such a circumstance, due process rights are violated "only when an emergency procedure is invoked in an abusive and arbitrary manner." Id. at 62.

The inquiry is thus twofold: whether there was an emergency that required immediate action, and whether adequate post-deprivation remedies were available. Id. at 61-62. In determining the need for immediate action, the Second Circuit, relying on the Supreme Court's decision in Hodel, directs that courts eschew hindsight analysis of whether an emergency actually existed, but rather, afford the decision to invoke the

emergency procedures "some deference." Id. at 62 (relying on Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 302-03, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)). That is, "when there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist . . . the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." Catanzaro, 188 F.3d at 63.

Applying these principles to the facts of this case, this Court finds that Plaintiff has failed to present sufficient evidence from which a trier of fact could reasonably conclude that Defendant Krebs acted arbitrarily or abused his discretion when he ordered that the Leland House be demolished on an emergency basis. This Court further finds that New York law provides sufficient post-deprivation process in situations where emergency demolitions occur.

First, other than his own unqualified opinion, Plaintiff has not presented any evidence to support his contention that the Leland House remained structurally sound after the fire. Nor has Plaintiff rebutted the evidence from Kaleta, a Building Inspector, and Runge, a professional civil engineer, that the building posed a danger to the community. Instead, Plaintiff claims that Defendants "ambushed" him with Runge's expert opinion testimony submitted after the discovery deadline. (Seeger Aff., Docket No. 33, ¶ 2.) But Runge is not an expert witness; he is a fact witness. His affidavit describes what he observed when he inspected the Leland House, the conclusion he reached, and the opinion he gave to Krebs. To this Court's knowledge, Runge is not tendered as an expert witness. In any event, any prejudice suffered by Plaintiff is of his own making because despite knowing that Runge was a fact witness, he never deposed him. (Perley Aff.,

10

Docket No. 19, ¶ 8; Seeger Aff., ¶ 14.)  Thus, this Court finds that Plaintiff has presented insufficient evidence to rebut Defendant's proof that the fire left the Leland House structurally unsound and a danger to the community.  See Fed. R. Civ. P. 56(e) ("[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party . . . must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the other party.")

Second, setting aside whether the Leland House was *actually* unsound, Plaintiff has presented no evidence to rebut the reasonableness of Defendant Krebs's conclusion that the building presented a danger to the community.  Krebs himself inspected the building and concluded that it posed a danger.  (Krebs Aff., ¶¶ 4, 6.)  He then sought a second opinion from Kaleta, the Building Inspector, who also concluded that the fire-damaged Leland House was a threat to public safety and to adjoining properties.  (Kaleta Aff., ¶¶ 4-7.)  Further, Krebs solicited a third opinion from Runge, a professional civil engineer, who refused to certify that the building was structurally sound because, based on his observations, he concluded that the fire damage rendered the building a danger to the public.  (Runge Aff., ¶ 9.)  All of this information was relayed to Krebs before he made his decision to order demolition.  (Krebs Aff., ¶¶ 10-12.)

It is therefore uncontested that at the time Krebs ordered that the Leland House be demolished, he was operating under the reasonable understanding that the Leland House was structurally unstable and presented an immediate threat to the public.  As such, Krebs' directive to Kaleta to demolish the Leland House was based on competent evidence, and did not come as the result of arbitrary decision-making.  See Catanzaro, 188 F.3d at 63

11

(stating that where there is competent evidence from which an official could reasonably conclude that an emergency situation exists, a constitutional violation exists only when the official acts arbitrarily or abuses his discretion).

Third, Krebs's determination that the circumstances required immediate demolition of the Leland House is entitled to "some deference" under Hodel and Catanzaro. As the Second Circuit has recognized, "[i]f an official believes that the public is in immediate danger, he or she should not hesitate to invoke an emergency procedure for fear of being sued, and being liable for damages should his or her decision turn out to be incorrect in hindsight." Catanzaro, 188 F.3d at 63. Plaintiff's argument that Krebs violated his due process rights by failing to conduct a hearing to determine whether the Leland House should be demolished on an emergency basis presents exactly the circumstances that the Second Circuit stated "cannot be the proper result." Id. at 63.

Fourth, Krebs's decision to order the demolition of the Leland House falls squarely within his discretion under the law, and Plaintiff has not presented any evidence that Krebs abused his discretion in invoking the emergency demolition procedure. Section 77-11 of the Code of the Village of Springville, NY, authorizes the Mayor to act in building emergencies as follows:

> In cases of emergency where the delay of proceedings as herein provided would result in probable loss of life or property, the Mayor shall have the power to direct the Code Enforcement Officer or his qualified designee to proceed at once to take such action as is needed to guard the safety of persons and property. The cost of such emergency action shall be collected in the same manner as provided in § 77-8.

Code of the Village of Springville, NY § 77-11.[6]

Even with the dispute between the parties concerning whether the Leland House was *actually* structurally sound, this Court finds that no reasonable trier of fact, after considering the evidence that Krebs personally viewed the damage to the Leland House and was advised by the Building Inspector and a professional civil engineer that the damage rendered the structure unsound, could reasonably conclude that Krebs acted arbitrarily or abused his discretion under the law in invoking the emergency demolition procedures. Cf. Catanzaro, 188 F.3d at 63.

Finally, New York law provides Plaintiff with sufficient post-deprivation process in the form of a CPLR article 78 proceeding. See Noroian v. City of Port Jervis, 16 A.D.3d 392, 791 N.Y.S.2d 147, 148 (2d Dept 2005) (holding that CPLR article 78 proceeding is sufficient post-deprivation process for immediate demolition of a dangerous building).

In sum, this Court finds that Plaintiff has failed to raise any material issues of fact to contradict Defendants' evidence demonstrating (1) that Krebs observed unsafe conditions in the Leland House after the fire, (2) that Krebs sought the opinions of the Building Inspector and a professional civil engineer, who both concurred that the structure posed a danger to the community and surrounding properties, (3) that Krebs reasonably believed that the structure could collapse into public ways, and (4) that Krebs reasonably exercised the discretion vested in him under the Village code to authorize demolition on an emergency basis to guard the safety of persons and property. Accordingly, no reasonable factfinder could conclude that Defendants violated Plaintiff's right to procedural

---

[6] Available at www.villageofspringvilleny.com.

due process. Summary Judgment in Defendants' favor is therefore warranted. See Smith v. City of Albany, No. 01:03-CV-1157, 2006 WL 839525, at *15 (N.D.N.Y. Mar. 27, 2006) (granting summary judgment in similar circumstances).

**D.     Plaintiff's Political Retaliation and Equal Protection Claims**

Defendants have also moved for summary judgment on Plaintiff's political retaliation and equal protection claims. Plaintiff alleges in his Complaint that Defendants violated his First Amendment rights by demolishing the Leland House in retaliation for his political activities. (Complaint, Docket No. 1, ¶¶ 49-59). He also alleges that Defendants violated his Equal Protection rights under the Fourteenth Amendment by permitting other building owners to rebuild their structures after fires. (Complaint, ¶¶ 60-71.)

But Plaintiff has not presented any evidence in support of either of these claims, nor does he or his attorney discuss them in their affidavits. Accordingly, Defendants are entitled to summary judgment based on Plaintiff's failure to offer evidence in support of his claims, failure to respond to Defendants' motion, or on the basis that Plaintiff has abandoned or failed to prosecute these causes of action.

## IV. CONCLUSION

For the reasons stated above, this Court finds that Defendants are entitled to summary judgment. Their motion will therefore be granted, and Plaintiff's will be denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 18) is GRANTED.

FURTHER, that the claims against Defendants Timothy L. Horner and Michael Kaleta, and the claims against Defendant Krebs in his individual capacity, are DISMISSED.

FURTHER, that Plaintiff's Motion for Summary Judgment (Docket No. 26) is DENIED.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.


Dated:   March 18, 2008
         Buffalo, New York

 /s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge
